UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CIVIL ACTION NO. 15-1-WOB-JGW

TIMOTHY HOLLINGSWORTH                                              PLAINTIFF

V.

RON MOSSOTTI                                                          DEFENDANT

REPORT AND RECOMMENDATION[1]

Pro se plaintiff Timothy Hollingsworth was tasered in a Walgreen's store by defendant Ron Mossotti, an officer with the Newport Police Department. Plaintiff contends in this 42 U.S.C. §1983 action that the tasering, which accompanied plaintiff's arrest, constituted excessive force. Pending now is defendant's motion for summary judgment. Doc. 38. After considering the record and applicable law, the Court recommends the motion be granted.

I. Factual and Procedural History[2]

The record before the Court is limited. Defendant has filed plaintiff's deposition (doc. 46, hereafter "plaintiff's depo.") and some citations and reports. *See* Docs. 38-1 through 38-6.

---

[1] On February 24, 2015 the presiding district judge issued an order referring this case to a magistrate judge "to conduct all further proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions." Doc. 15, p. 1.

[2] Generally, the parties do not contest the most crucial relevant facts. Any disputed facts will be noted as such. Of course, the familiar standard of review for ruling on a motion for summary judgment requires the Court ultimately to review the facts in the light most favorable to plaintiff, the nonmoving party. *See, e.g., Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (holding that when ruling on a motion for summary judgment the court "must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the nonmoving party.") (quotation marks omitted).

Plaintiff relies primarily upon Walgreen's security camera footage depicting the tasering. Doc. 42.

In early 2014, felony warrants for assault and theft charges were outstanding against plaintiff in the Northern Kentucky/Cincinnati area. On February 19, 2014 plaintiff was located in a Walgreen's store in Newport, Kentucky, to which defendant and detective Jason Gabbard were dispatched.

Though the tasering was captured on Walgreen's security cameras, defendant curiously does not discuss the video footage in his motion for summary judgment or reply brief. Instead, defendant relies primarily upon plaintiff's deposition, from which the following facts are derived. While plaintiff was standing at the cosmetics counter buying a gift card he heard someone yelling "remove your hands from your pocket" at least once and possibly up to four times. Plaintiff's Depo. p. 87-88. Plaintiff did not know who had given the verbal command(s) nor to whom the command was addressed. *Id.* at 88. Plaintiff also did not know the person giving the command(s) was a police officer until he turned in the direction from which the commands were emanating. *Id.* at 91. When plaintiff turned he saw that two officers had handguns or tasers pointed at him. *Id.* at 94-95. Plaintiff admitted he took a step or two in the direction of the officers, though he did not "rush[] towards" them (*id.* at 97), then he took a step or two backwards while the officers were screaming his name and repeating the command directing him to remove his hands from his pockets. *Id.* at 97-99.[3]

---

[3] Plaintiff testified that he did not actually have his hands in his pockets but admitted that his hands were near the pocket area of his hooded sweatshirt ("hoodie"). *Id.* at 98, 130.

Plaintiff raised his hands and "[i]t wasn't much longer after" that defendant tasered plaintiff. *Id.* at 100. When asked to clarify how much time elapsed between his having raised his hands and defendant having tasered him, plaintiff only said it was "real close . . . ." *Id.* at 101. Plaintiff agreed when asked if it was a "few seconds" after his hands were raised that he was tasered. *Id.*

Plaintiff initially maintained that he was tasered a second time while he was on the ground. *Id.* at 102-103. However, he equivocated greatly when asked follow up questions by defendant's counsel about the alleged second tasering. *Id.* at 103-104.[4] When defendant's

---

[4] The following relevant exchanges occurred at plaintiff's deposition:

> Q. [by defendant's attorney]  After the tasing you were arrested pretty quickly and you submitted and there was no problem, correct?
> A. [by plaintiff] Well, after I was on the ground I was shocked again with that stun gun.
> Q. Okay.  When you—
> A. I was shocked standing up and when I hit the floor I was still flying around.  You—inadvertently.
> Q. Yeah.  And let me ask you this.  And this is, because the video you don't have the sound, so I don't know.  Did you say anything to the officers after they—after you heard remove your hands from your pocket until the time that you were tased, did you say anything?
> A. No, nothing.
> Q. Are you certain that you were tased another time after you were on the ground?
> A. I was tased once when I was standing and then when I was on the ground, I still was continuing to being [sic] tased.
> Q. Okay.
> A. I estimated that there had been two shocks, no more than that.  Not—and that—not that I can remember because there was a little unconscious period of time there.
> Q. Okay. Let me--and that's where—are you certain that you were tased once, there was a pause, it stopped and tased again, or is it possible that you were tased once and it continued after the time you fell on the floor? Do you know?
> A. I mean, I would have to ask Mr. Mossotti, he would—I would have to be in his mind to ask him about [that] but I know that I had hit the floor and  I was being shocked, after I was standing and hit the floor.
> Q. So, it sounds like you know you felt the shock continue after you hit the floor?
> A.  Yes, ma'am, I did continue to feel the shock.
> Q. Okay. But it sounds like you're not sure that you were tased actually another time. It may have been the first tase that just continued after you hit the floor?
> A. I mean I'm not an expert on that. So, I—I wouldn't know but I know that.
> Q. I'm just asking what you felt.  I'm not asking for you to be an expert--

counsel showed plaintiff a printout from Mossotti's taser showing that it was discharged only once for a period of seven seconds on the day in question, plaintiff simply responded that the report "speaks for itself." *Id.* at 104-105. Finally, plaintiff had no explanation (and at times even gave nonresponsive, seemingly nonsensical answers) when questioned as to how he knew he had been tasered a second time since he maintained that the first tasering had rendered him unconscious. *Id.* at 107-108.[5]

---

      A. I felt like electric shock going through my body, and I urinated on myself at the—in the process.
Plaintiff's depo, p. 102-104.

[5] The most relevant portions of plaintiff's deposition on this point are as follows:

      Q. Okay. You said at some point you lost consciousness.
      A. Yes.
      Q. When did you lose consciousness?
      A. Right at the time—I remember waking up to Officer Gabbard, and he was asking me if I was okay. At that time, I mean, I really didn't remember the consciousness part, but then when I noticed I urinated on myself, I mean, I knew that at that time that I was—there was a [sic] unconscious period of time.
      Q. What's the last thing that you recall before you lost consciousness?
      A. Me raising my hands and him shocking me, and then I remember Gabbard asking me if I was okay.
      Q. Do you remember falling on the floor?
      A. No, but I've seen the videotape, and now it looks like helping me remember the thing, so I—I was—I'm trying to be completely honest about everything here.
      Q. Okay. How do you know if you were tased after you fell on the floor if you were unconscious?
      A. I don't know what.
      Q. You indicated earlier that you believe that you felt continuing to be tased after you feel [sic] on the floor.
      A. Yes.
      Q. But how would you know that if you were unconscious? You just told me that you went unconscious after Officer Mossotti tased—shot the taser at you and you had your hands up, that's the last thing you remember.
      A. No, I said there was a period of time when I urinated on myself and I felt that there was a type of—there had to be a period of unconsciousness. And I was on the floor at the time watching the videotape. And there was a time that I was out, you know?
      Q. Do you know when that was?
      A. I mean, I don't know what the human body can take.
Plaintiff's depo, p. 107-108.

An ambulance was called to Walgreen's and emergency medical technicians (EMT) unhooked the taser gun barbs from plaintiff's chest. *Id.* at 113-114. Plaintiff did not sustain injuries when he fell to the floor and he told neither the officers nor the EMTs that he (plaintiff) needed additional medical assistance. *Id.* at 113-116. Likewise, plaintiff requested no medical attention when he was taken to the Newport police department, nor was he physically abused at that facility. *Id.* at 118. Plaintiff also requested no medical attention when he was subsequently taken to the Campbell County jail, though he did see a nurse practitioner to treat depression at that facility. *Id.* at 119-124.

Plaintiff testified he had no knowledge of any other complaints received by Newport about police officers in general, or defendant specifically, using excessive force. *Id.* at 126-127. Plaintiff only had a "vague idea" of what training Newport police officers received regarding usage of stun guns/tasers, nor did he know/understand the internal policies and procedures of the Newport Police Department. *Id.* at 128.

In stark contrast to defendant's decision to ignore the Walgreen's video footage and instead rely upon plaintiff's deposition, in his response to the motion for summary judgment plaintiff ignores his deposition and instead focuses almost solely upon the Walgreen's video footage. Before relating what is displayed in the footage it is important to note what is not—namely, the video contains no audio. Second, though plaintiff is visible throughout the relevant portions of the video, neither defendant nor his partner are depicted clearly until after plaintiff was tasered.[6]

---

[6] The best camera angle the Court located on the dvd was shot from overhead, near the cosmetics counter. There is another angle on the dvd depicting the tasering but that angle originates from the far end of a store aisle and, consequently, it is extremely difficult to make out anything depicted from that angle with reliable precision. Also,

The video shows that at 9:01:55,[7] plaintiff looked to his left and then took about three steps in that direction (toward the door through which the officers entered the store). Plaintiff then stood still from 9:01:59 to 9:02:08 with both hands near his waist, which also meant his hands were near the front pockets of his hoodie. Plaintiff began to raise both hands above his head at 9:02:08 and his hands were fully raised by 9:02:09. Plaintiff then took two steps backwards and at 9:02:11 he began to fall to the floor, presumably having been tasered (the actual firing of the taser is not visible).

### C. Procedural History

Plaintiff filed this pro se §1983 action in January 2015. Doc. 1. The handwritten complaint, which is not a paradigm of clarity, alleges that defendant Mossotti tasered plaintiff twice, including once while plaintiff was on the ground. Plaintiff alleges he was rendered unconscious for 20-30 seconds and urinated on himself. Plaintiff further alleges he had placed his hands up in a submissive position before the tasering and that he did not receive proper medical care thereafter. The complaint asserts the tasering(s) violated the Eighth Amendment and "probably equal protection of the law." *Id.* at p. 4. Plaintiff also asks the Court to find that

---

the Court's review of the dvd was hampered by the fact that it contains hours of seemingly irrelevant footage, such as shots of the store parking lot and the front entrance. Though the Court eventually located the depiction of the tasering, the Court declined to sift through hours of facially extraneous footage simply to see if an evidentiary needle would appear amidst the irrelevant haystack of film. *See, e.g., Emerson v. Novartis Pharmaceuticals Corp.*, 446 Fed. Appx. 733, 736 (6th Cir. 2011) ("A district court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact. [J]udges are not like pigs, hunting for truffles that might be buried in the record.") (quotation marks and citations omitted). Plaintiff, as the party who introduced the dvd into the record and heavily relies upon it, bore the responsibility to state with particularity which portions of the video he deemed significant.

[7] All times listed are approximate.

the tasering(s) constituted assault in the fourth degree under Kentucky law. Plaintiff asks for $150,000 in damages from defendant in his individual capacity and $175,000 in defendant's official capacity.

Defendant filed an answer in February 2015 (doc. 13) and in early March 2015 the presiding district judge issued an order giving the parties slightly over four months to complete discovery. Doc. 17. In response to plaintiff's motion for production of documents, the Court issued an order in April 2015 telling plaintiff that he "does not need to seek the Court's permission to obtain routine discovery from defendant." Doc. 19. Nonetheless, plaintiff waited until the eve of the close of discovery to seek an extension of the discovery deadlines in order to depose defendant, without explaining why he had not sought to depose defendant earlier. Consequently, the Court denied the motion for extension of time and motion to depose defendant. Doc. 35. As a result, there is no deposition of defendant in the record.

Defendant timely filed the pending motion for summary judgment on August 10, 2015. Doc. 38. Plaintiff filed a response later that month and defendant filed his reply in September 2015. Docs. 41, 44. The matter is thus ripe for adjudication.[8]

## II. Analysis

### A. Summary Judgment Standard

---

[8] Plaintiff also filed a "response" (really a sur-reply) to defendant's reply in September 2015. Doc. 48. The Court did not authorize the filing of a sur-reply and, accordingly, the sur-reply could be stricken from the record. However, in the interests of expediency, the Court instead has chosen to give no weight to the sur-reply.

Summary judgment is proper only if the facts on file with the court demonstrate that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party may discharge its burden by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party cannot rest on its pleadings, but must identify specific facts that remain in dispute for the finder of fact at trial. *See id.* at 324. Although all inferences are drawn in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), the nonmoving party must present significant and probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). "[W]itness accounts seeking to contradict an unambiguous video recording do not create a triable issue [and] . . . in disposing of a motion for summary judgment, a court need draw only *reasonable* inferences in favor of the nonmoving party; it need not construe the record in such a manner that is wholly unsupportable—in the view of any reasonable jury—by the video recording." *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (quotation marks and citations omitted).

The court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether a genuine issue of material fact remains for a fact finder at trial. *Anderson*, 477 U.S. at 249. The key inquiry is whether the evidence presents a "sufficient disagreement to require submission [of the case] to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material

facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

### B. Assault

In this civil case plaintiff asks this federal court to find defendant guilty of a state law criminal offense. Simply put, defendant is entitled to summary judgment on this cause of action because: a) a civil case is not a proper vehicle to adjudicate criminal guilt; b) a federal court is not the proper forum to make an initial determination of whether someone is guilty of a state criminal offense; and c) plaintiff has not shown how the Kentucky criminal assault statute(s) provide him with a civil private right of action.

### C. Equal Protection

Plaintiff ostensibly raises a claim that his tasering violated the Equal Protection clause. However, plaintiff's complaint only states tentatively that defendant "probably" violated his right to equal protection. Doc. 1, p. 4. Such a provisional pleading is insufficient to present properly a cognizable claim.

Moreover, "[i]n order for Plaintiff's claim to survive Defendants' motion, Plaintiff had to allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). A failure to make such an allegation means an equal protection claim "fails at the inception." *Id.* Plaintiff has made no showing whatsoever that he was treated differently or

improperly due to his membership in any legally recognized class. Accordingly, even if the Court leniently assumes an equal protection claim was intended and pled cognizably, defendant would be entitled to summary judgment.

### D. Improper Medical Care

Defendant seems to perhaps attempt to raise a cause of action based upon allegedly improper or inadequate medical care. Defendant raises no medical care claims in the section of his complaint which actually sets forth his claims for relief (*see* doc. 1, p. 4); however, in the factual section of his complaint he contends, generically and without elaboration, that he "didn't receive the right medical care."[9] Doc. 1, p. 3.

"The leniency granted to pro se petitioners . . . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The Court could conclude that plaintiff has not pled cognizably a claim for improper/inadequate medical care. However, any medical care-based claim fails even if the Court leniently construes the complaint to raise such a claim.

---

[9] Similarly, in that factual section plaintiff contends defendant falsified a "uniform citation." Doc. 1, p. 3. Plaintiff does not point out how such an action is cognizable under §1983 as he does not elaborate on the contents of the citation or the alleged nature of the falsification(s) thereof and how those falsification(s) deprived plaintiff of any constitutional right(s). Accordingly, even if the Court were to assume generously that plaintiff pled a cause of action based upon defendant's alleged falsification of a citation, such a construed cause of action would be insufficient to survive summary dismissal. *See, e.g., Balsley v. Boy Scouts of America*, 2015 WL 5385087, at *1-2 (S.D. Ohio Sept. 15, 2015) ("To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Thus, Rule 8(a) imposes legal *and* factual demands on the authors of complaints. Although this pleading standard does not require detailed factual allegations, ...[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action, is insufficient. A complaint will not suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (quotation marks and citations omitted).

Courts have struggled to address the proper constitutional standard to apply to claims of persons in plaintiff's position receiving improper/insufficient medical care. *See Boone v. Spurgess*, 385 F.3d 923, 933-934 (6th Cir. 2004) (discussing the various standards used by courts). Indeed, the Sixth Circuit recently analyzed a similar claim under both the Fourth Amendment's objective reasonableness test and the Fourteenth Amendment's deliberate indifference test. *See Smith v. Erie County Sheriff's Department*, 603 Fed.Appx. 414, 418-422 (6th Cir. 2015). However, defendant is entitled to summary judgment on a medical care claim regardless of which test is utilized.

Simply put, plaintiff has not shown that he was denied *any* necessary medical care or that *any* care he did receive was improper/insufficient. As previously discussed, plaintiff admitted in his deposition that he did not request additional medical care. Moreover, other than the pain inherently involved in having been tasered, plaintiff has pointed to no other injuries he sustained from any acts taken by defendant Mossotti or any other Newport Police Department personnel. In short, plaintiff has not shown that defendant was either objectively unreasonable in failing to ensure plaintiff received proper medical care or that defendant was deliberately indifferent to plaintiff's medical needs. Plaintiff's unadorned conclusion that his medical care was improper is simply insufficient to raise a cognizable claim. *Balsley*, 2015 WL 5385087 at *1-2.

### E. Eighth Amendment

Plaintiff contends the tasering, which accompanied plaintiff's being arrested by defendant, violated the Eighth Amendment's ban on cruel or unusual punishment. However, as plaintiff was not a convicted prisoner at the time he was tasered, the Eighth Amendment is inapplicable. *See, e.g., Kingsley v. Hendrickson*, ___ U.S. ___, 135 S.Ct. 2466, 2475 (2015)

("pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'") (citations omitted). As the Sixth Circuit explained in detail:

> Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between. If the plaintiff was a convicted prisoner at the time of the incident, then the Eighth Amendment deliberate indifference standard sets the standard for an excessive force claim. But if the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard.

*Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008) (quotation marks and citations omitted). Because plaintiffs excessive force claim stems from his arrest the claim arises under the Fourth Amendment,[10] meaning that defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim.[11]

### F. Construed Fourth Amendment Claim

Plaintiff has raised explicitly no additional claims for relief. Therefore, the Court could simply grant summary judgment to defendant without addressing claims which plaintiff theoretically could have brought—but did not. *See, e.g., Brown v. Matauszak*, 415 Fed.Appx. 608, 613 (6th Cir. 2011) ("a court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (quotation marks and citation omitted); *Bowman v. Mitchell*, 2010 WL 1529473,

---

[10] *See, e.g., Jackson v. Steele*, 2014 WL 2801337, at *5 (E.D. Ky. June 19, 2014) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("Plaintiff's excessive force claim arises out of his arrest by the defendant officers and is therefore properly analyzed under the Fourth Amendment's 'reasonableness' standard.").

[11] On October 22, 2015, over nine months after filing his complaint and roughly six weeks after defendant filed his reply in support of his motion for summary judgment, plaintiff filed a motion asking the Court to convert his Eighth Amendment claim to a Fourth Amendment claim. Doc. 49. Plaintiff offers no explanation whatsoever for his unreasonable delay, so the motion could be summarily denied. However, out of an abundance of caution, this report and recommendation will address a putative Fourth Amendment claim.

at *1 (W.D.Ky. April 14, 2010) ("The Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. The duty to be less stringent with *pro se* complaints, however, does not require [the Court] to conjure up unpled allegations, and the Court is not required to create a claim for a *pro se* plaintiff. To command otherwise would require the courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.") (quotation marks and citations omitted). However, in light of plaintiff's pro se status, the Court could elect to construe leniently plaintiff's Eighth Amendment claim as actually having been brought pursuant to the Fourth Amendment. *See, e.g., Glisson v. Sangamon County Sheriff's Department,* 408 F.Supp. 2d 609, 625-26 (C.D. Ill. 2006) (denying motion to dismiss excessive force claim brought pursuant to the Eighth Amendment and instead construing the claim as having been brought pursuant to the Fourth Amendment). Accordingly, the Court will address whether defendant is entitled to summary judgment if the Court elects to construe generously[12] the complaint as setting forth a veiled Fourth Amendment claim.

The United States District Court for the Eastern District of Tennessee has summarized the standard of review for a Fourth Amendment excessive force claim thusly:

---

[12] Significantly, plaintiff does not cite the Fourth Amendment whatsoever in either his complaint or response to defendant's motion for summary judgment. Therefore, it would be a true act of judicial leniency to construe the complaint as having raised a cognizable Fourth Amendment claim. However, such leniency would come with a steep analytic cost given the fact that plaintiff has completely failed to address the standards governing Fourth Amendment claims and "[t]he question of which amendment supplies [plaintiff's] rights is not merely academic, for the standards of liability vary significantly according to which amendment applies." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002).

13

> When a plaintiff brings a claim of "excessive force" against an officer, and the plaintiff was "seized" at the time of the alleged incident, that claim is analyzed under the Fourth Amendment. *Graham,* 490 U.S. at 395, 109 S.Ct. 1865. These claims are evaluated under the "objective reasonableness" standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight. Relevant considerations include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. As the Sixth Circuit has stated, the Fourth Amendment "does not require officers to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson v. McClellan,* 101 F.3d 1151, 1160 (6th Cir.1996). Thus, the inquiry is an objective one: whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. In determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence.

*Dillingham v. Millsaps*, 809 F.Supp.2d 820, 841-42 (E.D. Tenn. 2011) (citations and quotation marks omitted). The Sixth Circuit has held further that "[t]his standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). However, a court must carefully analyze the relevant facts on a case-by-case basis "[b]ecause [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . ." *Graham*, 490 U.S. at 396 (quotation marks and citation omitted). Finally, "[t]he officer's subjective intentions are irrelevant to the Fourth Amendment inquiry." *Phelps,* 286 F.3d at 299.[13]

---

[13] Therefore, plaintiff's contention (which is based solely only on his opinion and conjecture) that defendant had a "premeditated plan to use his stun-gun before he ever approached the plaintiff at Walgreen's[,]" (doc. 41, p. 5) is inapposite.

14

In addition to his overarching claim that he did not violate plaintiff's rights, defendant also contends he is entitled to qualified immunity on the individual capacity claims.[14] As explained by the Sixth Circuit:

> The issue of qualified immunity is essentially a legal question for the court to resolve. In determining whether qualified immunity applies, [the court] employ[s] a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. The doctrine protects all but the plainly incompetent or those who knowingly violate the law.
> When, as here, a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. The plaintiff has the burden of showing that a right is clearly established. However, the defendant carries the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time. While the facts are normally taken as alleged by the plaintiff, facts that absolutely contradict the record will not be considered as claimed by the plaintiff.

*Everson*, 556 F.3d at 494 (quotation marks, citations and footnotes omitted). "Generally, summary judgment based on qualified immunity is proper if the officer was not on notice that his conduct was clearly unlawful. However, if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper." *Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) (citation omitted).

The "Fourth Amendment right to be free from excessive force during an arrest . . . is 'well-grounded' in the law. *Jones v. Sandusky County, Ohio*, 541 Fed.Appx. 653, 660 (6th Cir. 2013). However, courts have been cautioned not to define the relevant constitutional provisions in such highly general levels. *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491, 494-95 (6th Cir.

---

[14] The official capacity claims against defendant are really actions against the City of Newport, the entity for which defendant is an agent. *See, e.g., Everson v. Leis*, 556 F.3d 484, 493 n. 3 (6th Cir. 2009). Because such a governmental entity cannot claim qualified immunity (*id.*), qualified immunity is discussed only as to the official capacity claims.

15

2012) ("The difficult part of this inquiry is identifying the level of generality at which the constitutional right must be clearly established. Without question, the use of objectively unreasonable force violates the Fourth Amendment. The Supreme Court, however, has repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established. In other words, the fact that it is clear that any unreasonable use of force is unconstitutional does not mean that it is always clear which uses of force are unreasonable.") (quotation marks, citations and paragraph breaks omitted).

The Sixth Circuit has addressed the two main types of tasering incidents at issue in excessive force cases in detail as follows:

> Cases addressing qualified immunity for taser use fall into two groups. The first involves plaintiffs tased while actively resisting arrest by physically struggling with, threatening, or disobeying officers. In the face of such resistance, courts conclude either that no constitutional violation occurred, or that the right not to be tased while resisting arrest was not clearly established at the time of the incident. In the second group of cases, a law-enforcement official tases a plaintiff who has done nothing to resist arrest or is already detained. Courts faced with this scenario hold that a § 1983 excessive-force claim is available, since the right to be free from physical force when one is not resisting the police is a clearly established right.

*Cockrell,* 468 Fed.Appx. at 495-96 (listing cases) (quotation marks, citations and paragraph break omitted). In the case at hand, plaintiff was not resisting arrest in the sense that he did not physically struggle with defendant or his partner nor is there an indication in the record that plaintiff verbally threatened the officers.

However, this case also does not easily fall into the second category of cases whereby a plaintiff did absolutely nothing to complicate an arrest or was tasered after having been already

16

arrested.[15]  The video footage from Walgreen's shows plaintiff having taken a couple of steps backwards, away from defendant, immediately prior to the tasering.  Moreover, it is important to bear in mind that the arrest and tasering took place in a public location with other individuals nearby and felony arrest warrants—including one for the violent crime of assault—were outstanding against plaintiff at the time.[16]

      Plaintiff, unsurprisingly since he makes no mention of the Fourth Amendment, has not shown any contrary authority by which an officer in defendant's position acted in violation of the Fourth Amendment by deploying a taser to effectuate an arrest.  Thus, taking into account the relevant facts, the Court concludes that defendant did not act in an objectively unreasonable manner.[17]  In addition, plaintiff has not presented *any* authority that clearly establishes that

---

[15] Plaintiff claims he was tasered twice but the video footage does not depict anything appearing to be a second tasering and the report from defendant's taser gun submitted into the record—which plaintiff has not challenged as to either admissibility or accuracy—reflects only one tasering lasting seven seconds.  Also, as discussed previously, plaintiff was equivocal, at best, during his deposition regarding having been tasered twice and did not challenge the accuracy of the taser gun usage report.  Finally, the written statement submitted by defendant and Gabbard to their police superiors –the admissibility of which plaintiff has not contested—mention only one tasering.  *See* Docs. 38-3, 38-4.  Therefore, plaintiff's statement regarding having been tasered twice flies in the face of the record and, consequently, cannot create a material issue of fact.  Moreover, it cannot be disputed reasonably from the record before the Court (including plaintiff's deposition and the officers' reports) that before the tasering defendant and/or his partner called plaintiff by name, told plaintiff that he was under arrest and instructed him to remove his hands from his pockets, meaning this is not a situation where a person was tasered utterly without warning.  *See Baker v. Union Twp.*, 587 Fed.Appx. 229, 236 (6th Cir. 2014) ("The tasing of a suspect without warning is, at the very least, an additional factor useful in determining whether an officer violated a suspect's Fourth Amendment right to be free of excessive force. Here, Ventre's tasing of Baker before giving Baker an opportunity to comply with instructions was a violation of clearly established law.") (citation omitted).

[16] Even taking the facts in a light most favorable to plaintiff, it is still inarguable that Walgreen's is an inherently public location at which other people were present (at least two people are visible near plaintiff on the video footage shortly before the tasering) and there were felony warrants, including one for a violent crime, outstanding against plaintiff.  A reasonable officer therefore would have felt concern for the safety of others while effectuating plaintiff's arrest, especially when plaintiff began to move away from the officers.

[17] According to the Sixth Circuit, in "no case where courts denied qualified immunity was the plaintiff fleeing, and in at least some of these cases, the court specifically referred to the fact of non-flight."  *Cockrell*, 468 Fed.Appx. at 496-97.  Indeed, in *Cockrell* the Sixth Circuit held that an officer who deployed a taser to arrest a fleeing

defendant or a similarly situated officer faced with the facts of this case would have been on notice that his conduct was clearly unlawful. Defendant, therefore, is entitled to qualified immunity for the claims asserted against him in his individual capacity.

Turning to the official capacity claims, those claims are functionally claims against the City of Newport. *See, e.g., Wingrove v. Forshey,* 230 F.Supp.2d 808, 827-28 (S.D. Ohio 2002) ("A suit against a government employee in his or her official capacity represent[s] only another way of pleading an action against an entity of which an officer is an agent.") (quotation marks and citation omitted). This Court recently summarized the legal standards for official capacity claims against municipalities under §1983 as follows:

> A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To assert a § 1983 claim against a municipality, a plaintiff must demonstrate that the alleged violation occurred because of a municipal policy or custom. *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir.2013) (citing *Monell,* 436 U.S. at 694). A plaintiff can do so by showing one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

---

misdemeanant was entitled to qualified immunity. *See* 468 Fed.Appx. at 495 ("Taking this guidance into account, we define the question this case presents as whether a misdemeanant, fleeing from the scene of a non-violent misdemeanor, but offering no other resistance and disobeying no official command, had a clearly established right not to be tased on July 3, 2008. Because neither case law, nor external sources, nor [t]he obvious cruelty inherent in taser use, would have put every reasonable officer on notice that Hall's conduct violated the Fourth Amendment . . . we hold that Hall is entitled to qualified immunity, even if he did use excessive force.") (quotation marks and citation omitted). Construing the video in the light most favorable to plaintiff could lead to a conclusion that he was not in full blown flight immediately prior to being tasered. However, the video unmistakably shows that he was stepping away from the officers. Logically, under *Cockrell* defendant's deploying a taser to effectuate the arrest of a person for whom felony warrants (including one for assault) were outstanding and who was backing away from defendant as if in flight would also be entitled to qualified immunity.

*Horn v. City of Covington*, 2015 WL 4042154, at *4 (E.D.Ky. July 1, 2015) (quotation marks omitted). To succeed on an official capacity claim plaintiff "must demonstrate a direct causal link between the custom or policy and the constitutional deprivation by showing that the particular injury alleged was caused by the execution of the particular custom or policy. Indeed, the governmental entity must be the moving force behind the deprivation." *Wingrove,* 230 F.Supp.2d at 828 (quotation marks and citations omitted).

Plaintiff has not made the requisite showing. He points to what purports to be the Newport Police Department's policy on the usage of force (doc. 41-1, p. 1-24)[18] but has not explained how that policy, the core of which requires officers to use only reasonable force, entitles him to relief. To the contrary, following that policy would reduce/eliminate the usage of excessive force. In other words, plaintiff has not met his burden via either his deposition or written submissions to the Court to show "a direct causal link between the custom or policy and the constitutional deprivation by showing that the particular injury alleged was caused by the execution of the particular custom or policy." *Wingrove,* 230 F.Supp.2d at 828 (quotation marks and citations omitted). Defendant consequently should be granted summary judgment on the official capacity claims.

### III. Recommendation

For the foregoing reasons, it is **RECOMMENDED**:

Defendant's motion for summary judgment [Doc. 38] should be **granted**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed.

---

[18] Defendant has not challenged the admissibility of the policy submitted by plaintiff.

R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985).  A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within fourteen days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This the 22nd day of October, 2015

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge